**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MICHAEL K. HUNTER,** | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 05cv10904-NG** |
| | ) |
| **LUIS SPENCER,** | ) |
| **Superintendent, MCI-Norfolk,** | ) |
| **Respondent.** | ) |

**GERTNER, D.J.:**

**PROCEDURAL ORDER RE: EQUITABLE TOLLING**
April 30, 2008

This case concerns a threshold issue:  Michael Hunter
("Hunter" or "petitioner") seeks to have this Court equitably
toll the general one-year deadline for filing a petition of
habeas corpus in federal court.  While Hunter has colorably
alleged all the necessary elements of equitable tolling, the
Court requires more information to determine whether the deadline
should, in fact, be tolled.

**I.   PROCEDURAL HISTORY**

On December 7, 1994, Hunter was convicted in the Middlesex
Superior Court of first-degree murder of a person over 65 years
of age and unarmed robbery.  He was sentenced to life
imprisonment.  He unsuccessfully appealed his case, with the
Supreme Judicial Court affirming his conviction on February 20,
1998.  His conviction therefore became final on May 22, 1998,
following the expiration of the 90-day period for seeking

certiorari.  Docket Sheet, Commonwealth v. Hunter, No. MICR1993-
01084, Exh. 1 to Mem. Supp. Mot. to Dismiss (document # 6).

On December 3, 1998, Hunter filed a petition for federal
habeas corpus.  See Petition for Habeas Corpus, Hunter v. Hall
(No. 98-cv-12500-JLT, document # 1).  The petition asserted Fifth
Amendment claims related to incriminating statements Hunter had
made before his trial, the admission of which he challenged on
direct appeal.[1]  He also asserted Sixth Amendment ineffective
assistance of counsel claims, the first time he had presented
them to any court.  As discussed further below, Hunter's petition
was properly dismissed because it contained both exhausted and
unexhausted claims.

Hunter took no action for post-conviction relief for a time.
In March 2001, he did file a motion for DNA analysis to be

---

[1] Hunter's claims questioned the voluntariness of the statements.  The
Supreme Judicial Court described the circumstances of the questioning:

> On June 2, at 1 a.m., after obtaining further evidence
> linking the defendant to the victim on the night of
> her death, the police recommenced the interrogation,
> again receiving a Miranda waiver from the defendant.
> This time, the defendant eventually admitted to
> entering the victim's apartment the night of May 22,
> finding her on the kitchen floor in a semiconscious
> state, and placing her on her bed.  The questioning
> ceased at 5:30 a.m., and the defendant slept until 9
> a.m., when questioning began again.  The defendant
> then waived his Miranda rights for a third time, as
> well as his right to a speedy arraignment.  In
> response to this final round of questioning, the
> defendant made further incriminating statements . . .
> . The police ceased interrogating the defendant at 10
> a.m. and brought him to Malden District Court where he
> was arraigned.

Commonwealth v. Hunter, 426 Mass. 715, 720 (1998).  The Supreme Judicial Court
found that his statements were voluntary.  See id. at 721-23 & n.3.

performed at government expense, but the motion was denied by the
trial judge a little over two months later.  Docket Sheet,
Commonwealth v. Hunter, No. MICR1993-01084, Exh. 1 to Mem. Supp.
Mot. to Dismiss (document # 6).

On October 27, 2003, Hunter filed a Motion for a New Trial.
The Motion was denied in June 2004, and Hunter appealed.  As far
as the record shows, that appeal is still pending.[2]

On April 28, 2005, Hunter filed the instant petition and the
respondent moved to dismiss.  Hunter opposed.  See Pet'r Mem.
Opp. Mot. Dismiss (document # 8).  After considering the case,
the Court decided to appoint counsel.  See Mem. & Order re:
Appointment of Counsel (document # 9).  Attorney Michael Bourbeau
was appointed to serve, and filed a Supplemental Opposition to
the Motion to Dismiss (document # 14).

## II.  DISCUSSION

It is clear that some of Hunter's claims were both exhausted
and timely in his first federal petition for habeas corpus.  That
alone, however, is insufficient to make out a claim for tolling.
See generally Neverson v. Farquharson, 366 F.3d 32 (1st Cir.
2004).  The petitioner bears the burden of showing that tolling
is warranted.  Cordle v. Guarino, 428 F.3d 46, 48 (1st Cir.
2005).

---

[2] According to the Commonwealth, the matter remains pending because
Hunter failed to present the proper documents to the Supreme Judicial Court.
Resp. to Pet'r Suppl. Mem. at 4 n.2 (document # 15).  For the reasons
explained below, it is not necessary to reach the status of Hunter's appeal.

-3-

## A.   The Effect of the Initial Federal Habeas Petition

According to the law as it was in early 1999, Judge Tauro's decision to dismiss the case in its entirety was proper -- indeed required. According to Rose v. Lundy, 455 U.S. 509, 518-19 (1982), federal courts were not to address habeas corpus petitions unless the petitioner had fully exhausted his state remedies with respect to every claim. The dismissal was not discretionary. See id. at 510 ("[W]e hold that a district court must dismiss such 'mixed petitions' . . . ." (emphasis added)). In 1996, Congress had created a one-year deadline for the filing of a federal writ of habeas corpus. Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, § 101, 110 Stat. 1214, 1217 (codified at 28 U.S.C. § 2244(d)(1)).  Of itself, AEDPA's new deadline did not alter the Rose exhaustion rule; dismissal remained mandatory for mixed petitions. See Adelson v. DiPaola, 131 F.3d 259, 261-62 (1st Cir. 1997).  It was not until 2001, following Justice Stevens's suggestion in his concurring opinion in Duncan v. Walker, 531 U.S. 167, 182-83 (2001), that the First Circuit recognized the possibility of a stay to give the petitioner an opportunity to exhaust un-exhausted claims, instead of a complete dismissal. Compare Neverson v. Bissonnette, 261 F.3d 120, 126 n.3 (1st Cir. 2001) (recognizing stay as the "preferable course" and, in some situations, "the only appropriate course"), with Adelson, 131

-4-

F.3d at 261-62 (citing Rose and stating that the general rule is dismissal of all claims). Even if Judge Tauro arguably could have anticipated the Supreme Court's ruling in Duncan, he certainly did not err by not doing so.

Hunter was thus caught between Rose and Duncan. Two other judges in this Court, considering situations roughly analogous to this one, have found sufficiently compelling circumstances to permit equitable tolling. See Wojcik v. Spencer, 198 F.Supp.2d 1 (D.Mass. 2002); Testa v. Bissonnette, No. 01-CV-11609, 2002 WL 31194869 (D.Mass. Sept. 27, 2002). Those cases, however, are distinguishable on their facts.

In Wojcik, the petitioner filed a mixed petition within the one-year statute of limitations. 276 days later, in July 1999, the federal court dismissed pursuant to Rose. When the dismissal order entered, more than a year had passed since the petitioner's conviction had become final. 198 F.Supp.2d at 1-2. Two years after the dismissal, in 2001, the Supreme Court held that the pendency of a federal habeas petition does not toll the AEDPA deadline. Duncan, 533 U.S. at 181. After the mixed federal petition was dismissed, the petitioner promptly -- about two months later -- initiated proceedings to exhaust his state claims. After those proceedings concluded, he promptly re-filed in federal court. Wojcik, 198 F.Supp.2d at 2-3. Judge Saris

concluded that retroactive application of <u>Duncan</u> would be inequitable. <u>See</u> <u>id.</u>

Similarly, in <u>Testa</u>, the Court concluded that the retroactive imposition of the <u>Duncan</u> tolling rule would be inequitable. In that case, about six months had elapsed on the AEDPA clock when the petitioner filed a first mixed petition in federal court. <u>See</u> 2002 WL 31194869 at *4. The Court did not dismiss the petition pursuant to <u>Rose</u> for approximately a year. <u>Id.</u> Less than a month after dismissal, the petitioner began proceedings to exhaust in state court, <u>see</u> <u>id.</u>, and filed a second federal petition slightly before the conclusion of his state post-conviction appeals, <u>see</u> <u>id.</u> at *2. Judge Woodlock too concluded that the retroactive imposition of <u>Duncan</u> would work an unfairness as to the portion of the petition that had been exhausted when it was first presented to a federal court.

The reasoning in those cases is compelling, but the facts here are rather different. The federal petition was dismissed in March 1999, some three and a half months after it was filed. If Hunter had promptly pursued his state court remedies, this case might be on all fours with <u>Testa</u> and <u>Wojcik</u>, however, he delayed four and a half years. This Court will therefore focus on Hunter's cause for that delay. While the principles behind <u>Testa</u> and <u>Wojcik</u> excuse a certain portion of it, they cannot excuse it all.

-6-

**B.    The Effect of the Delay in Seeking State-Court Remedies**

Via affidavit, Hunter avers that "from December 1994 until
the filing of my current petition [in April 2005], I have
attempted to obtain all records relevant to my case through my
trial attorney, Mr. Christopher J. Muse, [and] my appellate
attorney, Mr. Elliot M. Weinstein, as well as the Middlesex
Superior Court." Aff. of Michael Hunter ("Hunter Aff.") at 2,
Exh. 1 to Suppl. Mem. Opp. Mot. Dismiss (document # 14).  In
October 1998, however, "approximately five thousand pages of
referenced material was lost, damaged, destroyed or stolen
through agents of the Commonwealth." Id. at 3.  The first
federal habeas petition was filed in December 1998 only to
prevent claims from being time-barred.  Hunter tried to
reassemble his legal files, and eventually filed a motion for a
new trial in October 2003. See id. at 3-4.  At no time between
the denial of his appeal in May 1998 and 2005 was he represented.
Id. at 1.

The essence of Hunter's claim is thus that he was barred
from asserting his claims due to the Commonwealth withholding his
legal papers from him.  He does not elaborate on how or why the
papers were withheld.  If true, however, Hunter's contentions
might constitute an adequate ground for equitable tolling.  Since
they allegedly occurred in October 1998, some five months after
his conviction became final, he could arguably have found it very

-7-

difficult to file either an application for state post-conviction
relief or a federal habeas petition.  Certainly the allegation
supports his claim to have filed an essentially protective
petition in December 1998.

A petitioner seeking equitable tolling[3] "bears the burden of
establishing two elements: (1) that he has been pursuing his
rights diligently, and (2) that some extraordinary circumstance
stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418
(2005).  For the first element, Hunter claims that "[f]ollowing
dismissal of the Petition and finding the loss of my legal
documents detrimental to my filing of action, I began to obtain
these lost documents again through any avenue available to me."
Hunter Aff. at 3 (document # 14).  It is not clear from this
statement whether Hunter's actions constituted the diligence
necessary for equitable tolling.  And for the second, he argues
that the loss of his papers stood in his way.  But Hunter makes
no effort to connect the specific claims he asserted in either of
his habeas petitions to the papers he lost, or explain why it
took so long to reassemble the papers sufficiently to file his
second federal habeas petition.  Thus, the Court cannot determine

---

[3] Hunter is also conceivably eligible for a form of statutory tolling,
because the destruction of legal documents would surely count as a state-
created impediment to filing his petition under 28 U.S.C. § 2241(d)(1)(B).
Hunter has never asserted statutory tolling claims, so the Court will not
address the issue further.

whether the papers he alleges were withheld did, in fact, hinder the specific claims he sought to assert.

### III. CONCLUSION

Hunter has colorably alleged each element of equitable tolling, but the Court cannot fairly evaluate his claims on this record. Therefore, petitioner is **ORDERED to prepare by May 29, 2008, an offer of proof** demonstrating (1) what steps Hunter took to pursue his rights following the alleged loss of his papers in October 1998; and (2) why the loss of the papers prevented him from exhausting each of the claims on the 1998 petition before his motion for a new trial in 2003. Depending upon that offer of proof, a hearing may be scheduled thereafter.


**SO ORDERED.**

**Date:  April 30, 2008**           /s/Nancy Gertner
                                    **NANCY GERTNER, U.S.D.C.**